IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARPENTERS PENSION FUND OF ILLINOIS, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 13 C 5720 ) |
| DANIEL E. MARTINAK TRUST NO. 1, and DANIEL E. MARTINAK, as Trustee of the Daniel E. Martinak Trust No. 1, | ) ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The Carpenters Pension Fund of Illinois asks the Court to order Daniel Martinak to turn over $41,000 to the Fund to partially satisfy its judgment against the Daniel E. Martinak Trust No. 1 and Martinak as trustee of the Trust, as well as an award of attorney's fees and costs incurred in trying to collect the judgment. The Fund also seeks attorney's fees and sanctions against Martinak for giving false testimony during a post-judgment deposition.

## Background

The Fund sued the Martinak Trust and Martinak as its trustee for unpaid contributions under the Employee Retirement Income Security Act (ERISA). The suit involved an entity named Fox Valley Exteriors, Inc. (FVE), which was a contributing employer to the Fund. Martinak was FVE's sole shareholder, director, and officer, and

the Trust owned FVE's business premises and leased it to FVE. FVE stopped contributing to the Fund and advised the Fund of its intent to terminate the agreements that required it to contribute, but it continued to operate its business. The Fund sent FVE a notice of withdrawal liability. FVE then filed for bankruptcy. In its lawsuit, the Fund alleged that FVE and the Trust were under common control and were a single "employer" for the purpose of collecting FVE's withdrawal liability.

On December 4, 2014, the Court granted summary judgment in favor of the Fund, finding the Trust and Martinak, as its trustee, jointly and severally liable to the Fund in the amount of $150,287.57. The Court later added an award of attorney's fees and costs in the Fund's favor in the amount of $40,476.40. To date, neither the Trust nor Martinak has made any payment on the amounts due.

After obtaining its judgment, the Fund initiated proceedings to discover assets that the Martinak Trust or Martinak, as trustee, had to satisfy the judgment. On July 9, 2015, the Fund took Martinak's deposition and learned that Martinak, in his capacity as trustee, had written a check for $41,000 from the Trust's account that he "presume[d]" he had made payable to Custom Fabrications Inc. Pl.'s Mot. to Avoid Fraudulent Transfer, Ex. 3 (Martinak Dep.) at 97-98. He said he owed money to Custom Fabrications, and "[t]hey were going to sue me." Id. at 98-99. Martinak further testified that Custom Fabrications was a company owned by his son-in-law. Id. at 51-52.

In an affidavit submitted later, in response to the Fund's motion, Martinak stated that, in fact, he had made out the $41,000 check from the Trust to himself and that after he received the check, he made a $40,500 payment to Custom Fabrications. Defs.' Resp. to Pl.'s Mot. to Avoid Fraudulent Transfer, Ex. 1 (Martinak Affid.) ¶ 13. Martinak

2

explained this as follows. The Trust owned commercial property in Elgin, consisting of nine rental units. *Id.* ¶ 4. Rental income was deposited into the Trust's account, and he made periodic income distributions to himself. *Id.* ¶¶ 5-6. In 2013, the Trust was having trouble making mortgage payments on the property due to vacancies and tenants not paying rent, so he approached his son-in-law to make up the difference between the rents collected and the mortgage payment. *Id.* ¶¶ 7-9. Custom Fabrications entered into a loan agreement with the Trust and required Martinak to personally guaranty repayment. *Id.* ¶ 10. A total of $48,500 was advanced through November 2014. *Id.* Martinak stated that the $41,000 check that he had issued to himself from the Trust's account represented rents collected from tenants, and he then used $40,500 from this amount to make a loan payment to Custom Fabrications. *Id.* ¶ 13. Martinak also produced what he claimed is a handwritten loan agreement between the Trust and Custom Fabrications.[1]

The Fund contends that the transfer from the Trust's account was a fraudulent conveyance and should be set aside. The Fund also seeks an award under ERISA of attorney's fees incurred in trying to collect the judgment. Finally, the Fund contends that Martinak committed perjury about the $41,000 check during his deposition and should be sanctioned in the amount of the attorney's fees incurred by the Fund in taking his deposition and for other work the Fund had to do to prepare the motion.

In response, Martinak and the Trust argue that the $41,000 constituted income from the property, which they argue was an asset of Martinak individually, not an asset of the trust or held by Martinak in his capacity as trustee. Accordingly, Martinak and the

---

[1] Given the Court's resolution of the present motion, it need not address the Fund's contention that the purported loan agreement is a sham created after the fact.

3

Trust argue, the judgment cannot be collected from these funds. They also argue that the $41,000 was used to pay a legitimate debt of the Trust. Finally, Martinak and the Trust contend that Martinak did not commit perjury, and thus imposition of sanctions would be inappropriate.

## Discussion

The Fund initiated post-judgment proceedings under Federal Rule of Civil Procedure 69(a), which states that "[t]he procedure on execution [of a money judgment]-and in proceedings supplementary to and in aid of judgment or execution-must accord with the procedure of the state where the court is located . . . ." The relevant Illinois statute states that a judgment creditor is "entitled to prosecute supplementary proceedings for the purposes of examining the judgment debtor or any other person to discover assets or income of the debtor not exempt from the enforcement of the judgment." 735 ILCS 5/2-1402(a). In order for the judgment creditor to proceed against a party who is not the judgment debtor—in this case, Martinak individually—the record must contain evidence showing that the third party possessed assets of the judgment debtor. *Lange v. Misch*, 232 Ill. App. 3d 1077, 1081, 598 N.E.2d 412, 415 (1992). When such assets are discovered, a court may "compel any person cited other than the judgment debtor to deliver up the assets to satisfy the judgment or enter any order or judgment against the person cited that could be entered in a garnishment proceeding." *O'Connell v. Pharmaco, Inc.*, 143 Ill. App. 3d 1061, 1067, 493 N.E.2d 1175, 1179 (1986). Section 2-1402 is "construed liberally, not only providing for the discovery of a debtor's assets and income, but also vesting the courts with broad powers to compel the application of discovered assets or income to satisfy a

4

judgment." *City of Chicago v. Air Auto Leasing Co.*, 297 Ill. App. 3d 873, 878, 232 Ill. Dec. 46, 697 N.E.2d 788, 791 (1998) (internal quotation marks omitted).

**A.     Fraudulent conveyance**

The Fund argues that Martinak's transfer of the $41,000 to himself as the Trust's beneficiary constituted a fraudulent conveyance. To show that a conveyance was fraudulent in law, a creditor must show that (1) the debtor transferred property for no consideration (2) while facing an existing debt, (3) leaving the debtor with insufficient assets to pay the debt. *See, e.g., Stoller v. Exchange Nat. Bank of Chi.*, 199 Ill. App. 3d 674, 683, 557 N.E.2d 438, 444 (1990).

Martinak and the Trustee argue that the $41,000 was not the Trust's property because it was income from the Trust's property, which they say belonged to Martinak individually. There is a basic problem with this argument: it is not what the trust instrument says. The declaration of trust says that the trustee:

> is hereby authorized, in the sole discretion of the Trustee, to distribute to the Grantor the whole or any part of the net income and/or principle of the Trust Estate, as the Trustee deems desirable for the best interest of the Grantor, it being the intention of the Grantor that the Trustee be as liberal as possible in the distributions to or on behalf of the Grantor, even to the extent of fully executing the Trust Estate and terminating the interests of the remaindermen.

Martinak Affid., Ex. A, art. 5.B. In other words, the trust doesn't *entitle* Martinak individually to the income from the trust; rather it *authorizes* the trustee (also Martinak) to distribute it to him in the trustee's discretion. Thus Martinak, wearing his individual hat, would get the income only if Martinak, wearing his trustee hat, chose to give it to him(self). The difference between discretion and entitlement undermines Martinak's argument that the income from the property didn't actually belong to the Trust to begin

5

with. The Court also notes that, as the Fund argues, the $41,000 at issue in this case, which was paid after the judgment was entered against the Trust, was the only payment to Martinak individually out of the Trust's bank account after it was opened. This further undermines the argument that the income only belonged to the beneficiary and never belonged to the Trust.

The Court therefore turns to the requirements for establishing a conveyance fraudulent in law. The first question is whether the conveyance of the $41,000 was made for no consideration. It was. Martinak, as trustee, conveyed the funds to himself, as individual. There was no preexisting debt or obligation, as the Court has discussed. Martinak and the Trust contend that the payment was made to Custom Fabrications to partially repay a loan made to help the Trust make its mortgage payments. But the Trust did not pay anything to Custom Fabrications; it gave the money to Martinak. Martinak is attempting to maintain the arguable façade that the Trust is a legitimate device and not simply a way to defraud creditors, but he has to live with the actions he took, and here he paid the money directly to himself—in what he now calls an income distribution—not to a creditor of the Trust.

Second, it is undisputed that Martinak wrote the check to himself while there was a preexisting debt of the Trust, namely the judgment in this case. In his deposition, Martinak testified that he knew that there was a judgment against the Trust but chose to make the distribution anyway. Martinak Dep. at 97-99.

Finally, it is undisputed that after the transfer of the $41,000.00 from the Trust account to Martinak's personal account, the Trust's bank account had a zero balance.

For these reasons, the Court concludes that the transfer of the $41,000 from the

6

Trust's bank account constituted a fraudulent conveyance to Martinak. The conveyance is set aside, and Martinak is ordered to turn over $41,000 to the Fund in partial satisfaction of the judgment in this case.

**B.     Attorney's fees**

The Fund requests an award of attorney's fees and costs associated with enforcing the judgment. Under 29 U.S.C. § 1132(g)(2)(D), the Fund is entitled to recover its reasonable attorney's fees and costs. This includes fees incurred in collecting a judgment. As the Seventh Circuit has aptly explained, "[i]t would make no more sense to deny attorney's fees for efforts to collect a judgment than it would to deny them for efforts to defend a judgment on appeal." *Free v. Briody*, 793 F.2d 807, 809 (7th Cir. 1986). The Fund's collection effort has been successful, so the Court grants the Fund's request for post-judgment fees.

**C.     Sanction against Martinak individually**

The Fund also requests imposition of sanctions on Martinak individually for giving false testimony during his deposition. The Fund asserts that Martinak committed perjury when he testified that he wrote the Trust's $41,000 check to Custom Fabrications Inc., when in fact he wrote the check to himself. A district court "has inherent authority to sanction conduct that abuses the judicial process." *Montano v. City of Chicago*, 535 F.3d 558, 563 (7th Cir. 2008). As the Seventh Circuit did in *Montano*, the Court will defer to the federal statutory definition of perjury: "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Id*. at 564. It's a close call in this case, but Martinak hedged his deposition answer just enough to slip by: he testified that

7

he "*would presume* [that the check] was made out to Custom Fabrications." Martinak Dep. at 98 (emphasis added). There is no evidence that he had, before the deposition, re-reviewed the check, which he had issued about 90 days earlier. And Martinak made (albeit a year later) what amounts to a correction by submitting an affidavit in connection with the present motion stating that he had written the check to himself. Under the circumstances, the Court finds the requisite intent to be lacking, though perhaps just barely.

## Conclusion

For the reasons stated above, the Court grants plaintiff's motion to avoid fraudulent transfer and to award attorney's fees and costs [dkt. no. 54]. The Court hereby directs Daniel Martinak to turn over the amount of $41,000 to the plaintiff within three days of entry of this order. Plaintiff is directed to submit a petition setting forth its attorney's fees and costs by December 23, 2016. The Court denies plaintiff's request for sanctions. The case is set for a status hearing on December 20, 2016 at 9:30 a.m. The hearing on plaintiff's motion to substitute Martinak individually for the defendants [dkt. no. 66] is advanced to that date and time.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: December 10, 2016